UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EMILIANO TORRES-AVILA,<br><br>Defendant. | NO. CR-06-6054-RHW<br>CR-02-2068-RHW<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS; SETTING PRETRIAL CONFERENCE AND TRIAL** |

Before the Court is Defendant's Motion to Dismiss (Ct. Rec. 40). A hearing was held on the motion on February 20, 2007. Defendant was present and represented by Kristine Olmstead. The Government was represented by Jane Kirk, substituting on behalf of Pamela Byerly.

Defendant asserts that the underlying deportation proceeding violated his due process rights and, therefore, cannot serve as a predicate element in support of a section 1326 charge. Specifically, Defendant argues that he did not knowingly and voluntarily waive his right to appeal at the deportation hearing because the Immigration Judge (IJ) erred in telling him that he was not eligible for § 212(c) relief.

## BACKGROUND

Defendant received his temporary residency in the United States on March 3, 1989. He became a lawful permanent resident on December 1, 1990. In 1993, he was indicted and convicted of Possession with the Intent to Distribute Marijuana.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS; SETTING PRETRIAL CONFERENCE AND TRIAL ~ 1**

On August 13, 1993, he was sentenced to a 30 month term of incarceration.

On January 7, 1994, while serving his sentence, he was served with a "Notice to Applicant for Admission Detained for Hearing Before an Immigration Judge," which advised him that he was to appear at a deportation hearing. Specifically, Defendant was notified that he was an alien who was convicted of a Controlled Substance Act violation. On March 16, 1994, Defendant appeared at the hearing without counsel. He asked for and was granted a continuance to allow him to review the documents that were provided to Defendant at the hearing. He was advised of his right to an attorney and was given a list of attorneys. He was also advised of his right to appeal the IJ's decision and was given a Notice of Appeal form.

On May 18, 1994, a deportation hearing was held. Defendant was present and not assisted by counsel. He advised the IJ that he would handle the deportation proceeding himself.

The IJ found that Defendant was deportable. The IJ further concluded that Defendant was not eligible for relief from deportation because of his aggravated felony and because he could not show good moral cause, and that he lacked the seven years as a lawful permanent resident and, therefore, was not eligible for § 212(c) relief.[1] Defendant was provided with a Notice of Appeal. He indicated that

---

[1] Section 212 of the Immigration and Nationality Act of 1952 excluded from the United States several classes of aliens, including those convicted of offenses involving moral turpitude or the illicit traffic in narcotics, or aggravated felonies. This section was subject to a proviso granting the Attorney General (AG) discretion to admit excludable aliens, if the alien had seven consecutive years of lawful unrelinquished domicile. 8 U.S.C. § 1182(c) (1994 ed.). In determining whether to grant relief, the AG balanced a number of factors, including the deportee's criminal record, family relationships, employment history, community

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS; SETTING PRETRIAL CONFERENCE AND TRIAL ~ 2**

he would be appealing and asked if he could be released on bond pending his appeal. This request was denied. Defendant never filed an appeal, and he was deported on August 28, 1995.

In 2002, Defendant was convicted in the Eastern District of Washington of Being an Alien in the United States following Deportation, in violation of 8 U.S.C. § 1326. On November 7, 2002, Defendant was sentenced to a 46 month term of incarceration; a one-year term of supervised release; and a $100 special penalty assessment. He was released on August 24, 2005, and was deported to Mexico. On February 10, 2006, a warrant issued for his arrest for the supervised release violations. On October 16, 2007, he was indicted on the instant charge of Being an Alien in the United States following Deportation.

## DISCUSSION

"Because the underlying removal order serves as a predicate element of a § 1326, a defendant charged with that offense may collaterally attack the removal order under the due process clause." *United States v. Pallares-Galan*, 359 F.3d 1088, 1094 (9th Cir. 2004) (*quoting United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987). In order to sustain the attack under the controlling statutory provisions, a defendant must ordinarily show: (1) exhaustion of available administrative remedies to seek relief from the deportation order, (2) improper deprivation of the opportunity for judicial review; and (3) fundamental unfairness of the underlying removal order. *See* 8 U.S.C. § 1326(d). An underlying removal order is "fundamentally unfair" if (1) an alien's "due process rights were violated

---

service, and moral character.

In 1996, this section was repealed and was replaced with a new section that gives the Attorney General the authority to cancel removal for a narrow class of inadmissible or deportable aliens, and the narrow class does not include anyone previously "convicted of any aggravated felony." 8 U.S.C. § 1229b.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS; SETTING PRETRIAL CONFERENCE AND TRIAL ~ 3**

by defects in the underlying deportation proceedings," and (2) "he suffered prejudice as a result of the defects." *Pallares-Galan*, 359 F.3d at 1094 (citation omitted).

An alien is barred under § 1326(d) from collaterally attacking his underlying removal order "if he validly waived the right to appeal that order during the deportation proceeding."[2] *Id.* (citation omitted). Where a waiver of the right to appeal a removal order is not "considered and intelligent," however, an alien has been deprived of his right to that appeal and thus to a meaningful opportunity for judicial review. *Id.*

Where the record contains an inference that the petitioner is eligible for relief from deportation "the IJ must advise the alien of this possibility and give him the opportunity to develop the issue." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (*citing Moran-Enriquez v. I.N.S.*, 884 F.2d 420, 422-23 (9th Cir. 1989). This requirement is mandatory. *Id.* "Where the record, fairly reviewed by an individual who is intimately familiar with the immigration law–as IJs no doubt are–raises a reasonable possibility that the petition may be eligible for relief," the IJ must address the issue with the deportee. *Moran-Enriquez*, 884 F.2d at 423 (9th Cir. 1989).

The Ninth Circuit has held that if the IJ erroneously informs the alien that he is not eligible for relief from deportation, a waiver of his right to appeal is not "considered and intelligent." *See United States v. Camacho-Lopez*, 450 F.3d 928 (9th Cir. 2006); *Pallares-Galan*, 359 F.3d 1088 (9th Cir. 2004); *Arrieta*, 224 F.3d 1076 (9th Cir. 2000).

Here, at the time of his deportation hearing, it was clear that Defendant was not eligible for § 212(c) relief because he had only been in the United States, at

---

[2]Here, it is undisputed that Defendant waived his right to appeal, when he failed to file his appeal by the designated time.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS; SETTING PRETRIAL CONFERENCE AND TRIAL ~ 4**

most, five years. Defendant argues that the IJ should have told him that if he appealed his order, he would continue to accrue time toward the seven year requirement, and that appeals generally take over two years. There is no case law directly on point to support Defendant's position.

Defendant cites to *United States v. Jimenez-Marmolejo*, 104 F.3d 1083 (9th Cir. 1996), and *United States v. Ahumada-Aguilar*, 295 F.3d 943, 946 (9th Cir. 2002), in support of his position. In *Jimenez-Marmolejo*, the Government conceded that the defendant's waiver was not knowing and voluntary because his counsel represented multiple defendants at the hearing, and the IJ obtained a collective waiver of appeal. 104 F.3d at 1085. In ruling that the defendant was able to show prejudice, the Circuit considered the fact that by the time of his deportation hearing, he had lived continuously in the United States as a lawful permanent resident for six years and ten months. *Id.* The Circuit also found that the defendant has shown three plausible facts that would support an application for discretionary relief. The Circuit concluded that given that plausible factors existed and the near-certainty that the defendant would have met the seven-year lawful residence requirement if he had not waived his right to appeal, the defendant was prejudice by the invalid waiver of his right to appeal. *Id.* at 1086. The Circuit ruled that the deportation was invalid, and reversed his conviction for attempting to re-enter the United States after having been deported. *Id.*

In *Ahumada-Aguilar*, the Circuit held that the petitioner was deprived of his statutory right to be represented by counsel at his deportation hearing, where the IJ accepted a mass silent waiver. 295 F.3d at 950. The Circuit also held that the IJ's erroneous interpretation of the impact of the deportation on a defendant's right of lawful re-entry into the United States caused the waiver of the right to appeal to not be knowing and voluntary. *Id.* In so ruling, the Circuit stated:

> While it may not be the duty of the IJ to inform a respondent that he may become eligible for a waiver of deportation during the substantial time required to pursue an appeal from the deportation

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS; SETTING PRETRIAL CONFERENCE AND TRIAL ~ 5**

> order, a competent attorney would have recognized the IJ's failure to calculate accurately the length of [the defendant's] total residence in the United States. A competent attorney would have urged him to press an appeal in order to accrue the final ten months necessary for him to qualify for a discretionary waiver of deportation.

*Id.* at 951.

At the minimum, these cases stand for the proposition that if it is reasonably certain that an appeal would allow the petitioner to meet the seven year requirement, the IJ must so inform the petitioner. In both these cases, the Circuit concluded that the petitioners were deprived of their right to counsel and considered the time remaining on the seven year residency requirement in determining whether prejudice resulted by the deprivation of counsel. These cases do not explicitly state that an IJ must inform a petitioner that he or she could possibly be eligible for § 212(c) relief if the petitioner has been a lawful residence for five years. In fact, *Ahumada-Aguilar* seems to suggest that it is not the IJ's duty to inform a petitioner that he may become eligible for a waiver of deportation during the time it takes to pursue an appeal. Because of this, the Court declines to extend the trigger point as to when the IJ must inform the petitioner of the possibility of meeting the seven year requirement if the petitioner files an appeal beyond the 10 months set forth in *Ahumada-Aguilar*. Moreover, it is undisputed that, in this case, Defendant waived his right to counsel and there is nothing in the record to suggest that this was not a knowing and voluntary waiver.

Here, at the time of his deportation hearing, it was not reasonably certain that if Defendant would have filed an appeal, he could have met the seven year requirement. A two year rule, as Defendant suggested, is too speculative. The length of an appeal depends on many factors, including the number of judges and the congestion of the court docket. The length of an appeal can easily be manipulated by counsel, and there is no mechanism to protect against the seeking of delays purely for the sake of accruing time. If the Court were to extend the rule to two years, it would effectively be establishing a process by which the petitioner

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS; SETTING PRETRIAL CONFERENCE AND TRIAL ~ 6**

could receive two appeals. The first would follow the deportation hearing, in which the petitioner could work through the appeal process until he or she obtained the seven year residency requirement, which would, in turn, allow the petitioner to obtain a second deportation hearing, with its attendant appeals process. Without case law to support such an outcome, the Court declines to adopt Defendant's proposed rule that if a petitioner is within 2 years of obtaining the requisite seven years of lawful residency, the IJ must inform the petitioner of the possibility that filing an appeal could result in the petitioner meeting the seven year requirement.

Defendant relies on the case of *Ortega de Robles v. I.N.S.*, 58 F.3d 1355 (9th Cir. 1995), in support of his proposed rule. In that case, the IJ concluded that the petitioner was deportable based upon her conviction documents and found her ineligible for § 212(c) relief. *Id.* at 1358. She appealed to the BIA, which affirmed the IJ and dismissed her appeal. *Id.* She appealed to the Ninth Circuit Court of Appeals. While her appeal was pending, she passed the seven year residency requirement. The Ninth Circuit remanded for consideration of § 212(c) relief. *Id.* at 1361. Specifically, the Ninth Circuit noted that because the petitioner had made a non-frivolous challenge to her deportabilty, she continued to accrue time during the pendency of the appeal. *Id.* at 1361 n.7. The petitioner made two challenges to her deportability: (1) that the INS did not prove her deportability because it did not produce evidence that she possessed cocaine; and (2) that the BIA erred in determining that she did not begin accruing time towards the seven year period until her status was adjusted to that of a "lawful permanent residence." *Id.* at 1328.

Under Defendant's theory, a petitioner should be allowed to take advantage of this rule even if the only reason he would appeal the IJ's decision would be to accrue time toward the seven year requirement. *Ortega de Robles* does not support this theory. Moreover, in *Ortega de Robles*, the Circuit did not find that the petitioner was eligible for § 212(c) relief; rather, it remanded the case for consideration of § 212(c) relief. It is too speculative to rely on *Ortega de Robles* in

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS; SETTING PRETRIAL CONFERENCE AND TRIAL ~ 7**

support of a two year rule.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss (Ct. Rec. 40) is **DENIED.**

2. A jury trial is set for **April 16, 2007**, at **9:00 a.m.**, in Richland, Washington. Counsel shall meet in chambers at **8:30 a.m.** on the first day of trial.

3. A pretrial conference is set for **March 27, 2007,** at **3:30 p.m.**, in Richland, Washington.

7. Pursuant to 18 U.S.C. § 3161(h)(1)(F), the time between January 19, 2007, the date the Motion to Dismiss was filed, until April 16, 2007, the new trial date, is **DECLARED EXCLUDABLE** for purposes of computing time under the Speedy Trial Act.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and to provide copies to counsel.

**DATED** the 6th day of March, 2007.

*S/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CRIMINAL\2006\Torres-Avila\deny.wpd

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS; SETTING PRETRIAL CONFERENCE AND TRIAL ~ 8**